NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2007
Decided March 22, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-3636

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *v.* | No. 94-CR-172-10 |
| PETER J. STEBBINS,<br>*Defendant-Appellant*. | Charles R. Norgle, Sr.<br>*Judge*. |

**O R D E R**

Peter Stebbins was found guilty by a jury of conspiring to import heroin, 21 U.S.C. §§ 952(a), 963, and was sentenced to 120 months' imprisonment. He filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he is unable to discern a nonfrivolous issue to pursue. Counsel's supporting brief is facially adequate, and Stebbins has responded to our invitation under Circuit Rule 51(b) to comment on counsel's submission. We limit our review to the potential issues identified in counsel's brief and Stebbins's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

Stebbins was one of fourteen codefendants charged with conspiring, from about January 1993 until June 1995, to import heroin into the United States. Most

of the coconspirators were essentially couriers; they brought heroin into the United States from overseas at the direction of Buruji Kashamu, the apparent kingpin, who resided in the Republic of Benin in western Africa. In March 1994 one of the couriers was arrested at O'Hare International Airport in Chicago, Illinois. He cooperated with the government and named several participants, who named others, and eventually the entire conspiracy came crashing down. Of the fourteen codefendants, two remain at large (one is Kashamu) and eleven pleaded guilty. Only Stebbins went to trial, where seven codefendants testified against him.

Ellen Wolters[1] testified that Stebbins, with whom she previously lived in Vermont, visited her twice in San Francisco in 1991 and spent freely on both occasions, which Ellen found unusual. Stebbins explained to her that he was smuggling heroin and invited Ellen to "jump on board" if she wished. After learning that another former friend (and later codefendant) was involved with the same operation, Ellen decided to join the conspiracy.

Before Ellen embarked on her first smuggling trip in September 1992, Stebbins told her how to swallow and keep down the capsules that were used to smuggle the heroin; he also advised her to dress conservatively while traveling in order not to stand out. Ellen traveled to Paris, Benin, and finally Brussels, where another coconspirator brought her several capsules of heroin. She was unable to swallow them, but still managed to bring them into the United States in a box of chocolates. She used a phone number supplied by Stebbins to coordinate delivery of the heroin to the buyer in Chicago.

A few weeks later, Ellen recounted, she took a second trip to Paris, Brussels, and Africa. Stebbins joined her on this trip along with Mickey Pudvah, another codefendant. The three of them concealed heroin in the linings of their jackets and flew back to Chicago, where the buyer of the heroin paid them in cash.

Ellen further testified that she took a third trip around January 1993. She traveled with Pudvah to Brussels, where she met up with Stebbins and two more people who recently had joined the conspiracy: Barry Blow and Ellen's sister, Catherine Wolters. Ellen said she became ill during this trip and stayed behind in Brussels while the other four—Stebbins, Pudvah, Blow, and Catherine—traveled back to the United States with heroin.

Catherine Wolters also testified against Stebbins. Catherine said that while Ellen stayed behind in Brussels, she and Stebbins flew back to the United States

---

[1] Ellen Wolters and her sister Catherine Wolters both testified at Stebbins's trial. To avoid confusion, we will refer to the women by their first names.

together. Catherine said they used jackets to smuggle the heroin. She followed Stebbins's instructions and carried her jacket onto the plane rather than placing it in her luggage. Stebbins, she said, carried two jackets. The destination, once again, was Chicago. Stebbins and Catherine went to a hotel, where he called the supplier in Africa and arranged to deliver the heroin to the buyer.

Catherine further recounted that she recruited several friends to act as couriers so she could continue profiting from the conspiracy while avoiding the risks of smuggling herself. In May 1993 she brought these recruits to Brussels, where they met up with Stebbins. Eight people in all (half experienced smugglers and half new recruits) traveled together to Indonesia, where those with experience—including Stebbins—"trained" the four new recruits, two of whom testified at Stebbins's trial. One said that during the week in Indonesia he confessed to Stebbins his apprehension about smuggling but received assurances that "it was really easy." The other new recruit who testified at trial said that Stebbins told her he had been on "tens of trips" and that he thought she would be a successful smuggler.

Barry Blow, who was present on the Indonesia trip, testified that he and Stebbins left Indonesia together and flew back to Brussels. Each man carried a bag containing heroin. Blow obtained a new passport in Belgium, claiming to have lost his old one, but in fact just trying to avoid questions about his trip to Indonesia. He used this passport to fly to Chicago, where he met up with Stebbins (who had returned to the United States separately). A buyer came to their hotel room and picked up Blow's bag. Blow was paid in cash and split the payment with Stebbins.

The government also introduced travel and wire-transfer records evidencing that Stebbins traveled to Europe again in July 1993, November 1993, and February 1994. At the close of the evidence, the jury found Stebbins guilty.

The probation officer accepted the government's position that Stebbins was responsible for at least 10 to 30 kilograms of heroin. That amount yielded a guidelines imprisonment range of 188 to 235 months, but the district court imposed a sentence of 120 months—the statutory mandatory minimum, 21 U.S.C. § 960(b)(1)(a)—because Stebbins suffers from serious health problems.

In his *Anders* brief, counsel considers whether Stebbins could argue on appeal that his defense was prejudiced by the government's submission of two documents on the eve of trial: a proffer to the court about coconspirator statements the government planned to elicit at trial and a motion in limine seeking approval to introduce evidence of trips and other actions taken by Stebbins and the codefendants before the conspiracy commenced in January 1993. The district court deemed admissible the evidence discussed in both the proffer and the motion, and

counsel does not propose to challenge that determination. Rather, counsel considers whether Stebbins could argue that his defense was prejudiced by the submission of these documents at 4:30 p.m. on a Friday afternoon, when trial was scheduled to commence the following Monday.

But even if we assume that the motions actually were untimely, basing an argument on their last-minute submission would be frivolous because, as counsel notes, Stebbins could not show that his defense was prejudiced. *See United States v. Doerr*, 886 F.2d 944, 970 (7th Cir. 1989). Here, the record contains nothing suggesting that in light of this new evidence Stebbins would have conducted any further investigation, called any additional witnesses, presented any other evidence, or adopted a different defensive theory; in other words, there is no apparent prejudice. Indeed, trial counsel spurned the district court's offer of additional time to review the motions before the court ruled, and though he declared that Stebbins was prejudiced by the late submissions, he could not articulate a single reason in support of his position. Moreover, as the district court observed, all of the witnesses who proposed to testify to the statements and prior acts were codefendants who already had pleaded guilty. Defense counsel had ample opportunity to review the transcripts of the plea colloquies where these codefendants admitted under oath the factual bases for their pleas. Notice of the likely content of their testimony thus was available to Stebbins well before trial, so there was no unfair surprise here.

Next, counsel considers whether Stebbins could argue that the evidence adduced at trial was insufficient to support the jury's finding of guilt. Stebbins moved for a judgment of acquittal, *see* Fed. R. Crim. P. 29, when the government rested and again at the close of evidence, so our review follows the familiar standard of *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We will uphold the jury's verdict so long as, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Romero*, 469 F.3d 1139, 1151 (7th Cir. 2006); *United States v. Haddad*, 462 F.3d 783, 791 (7th Cir. 2006). To prove the conspiracy charge, the government had to establish that Stebbins knowingly and intentionally entered an agreement to smuggle drugs into the United States. *See United States v. Macedo*, 406 F.3d 778, 791 (7th Cir. 2005); *United States v. Adkins*, 274 F.3d 444, 450 (7th Cir. 2001). Here, Ellen Wolters testified that Stebbins invited her to join him in smuggling heroin; two other recruits testified that Stebbins encouraged them to join and trained them when they agreed to do so. Ellen, Catherine Wolters, and Barry Blow all testified that Stebbins facilitated their smuggling activities, from offering tips on how to avoid detection and making travel plans, to arranging pickup and delivery of the heroin. They also testified that they traveled overseas with Stebbins, picked up parcels of heroin, and smuggled them back into the United States. In light of this evidence, it

would be patently frivolous for Stebbins to argue that the evidence failed to prove an agreement, joined by him, to import heroin.

The next potential argument—which is considered by both counsel in his *Anders* brief and by Stebbins in his Rule 51(b) response—is whether Stebbins could challenge his sentence in light of the fact that the quantity of heroin for which he was held responsible—10 to 30 kilograms—was never charged in the indictment or found by the jury. Stebbins argues that this omission means he was sentenced in contravention of *United States v. Booker*, 543 U.S. 220 (2005). But *Booker* simply reinforces the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence *exceeding the maximum* authorized by the facts established by . . . a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244 (emphasis added); *see also United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005). Here, the facts established by the jury verdict are that Stebbins conspired to import heroin, an offense for which the default statutory maximum was 20 years. *See* 21 U.S.C. §§ 952(a), 960(b)(3), 963. The sentence of 120 months Stebbins received is well below that, so it was for the court, not the jury, to ascertain the drug quantity by a preponderance of the evidence both in applying the statutory minimum, *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005), and the sentencing guidelines, *United States v. McReynolds*, 397 F.3d 479, 481 (7th Cir. 2005). Challenging Stebbins's sentence—which is significantly below the bottom of his guidelines range—would be frivolous. *See United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005).

To the extent that Stebbins—who in his Rule 51(b) response complains bitterly that appellate counsel submitted an *Anders* brief rather than prosecute his appeal on the merits—wishes to argue that the assistance he received from either trial or appellate counsel was deficient, he would be better served bringing that claim through a collateral proceeding under 28 U.S.C. § 2255. *See, e.g., United States v. Parker*, 469 F.3d 1074, 1075 n.1 (7th Cir. 2006); *United States v. Davenport*, 986 F.2d 1047, 1050 (7th Cir. 1993) ("[A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.").

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.